# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  49810-3-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| BRUCE J. BROOKS, | |
| Appellant. | |

BJORGEN, J. — Bruce Brooks appeals from his convictions and sentence for one count of residential burglary and one count of second degree identity theft.

Brooks argues that (1) the State did not present sufficient evidence for a jury to convict him of second degree identity theft, (2) the trial court abused its discretion by permitting testimony in violation of the best evidence rule, (3) the trial court abused its discretion by allowing improper opinion testimony on identity and guilt, (4) he received ineffective assistance of counsel, (5) cumulative error deprived him of a fair trial, (6) the trial court erred by imposing a combined sentence on the second degree identity theft conviction in excess of the statutory maximum sentence, and (7) the trial court erred in imposing certain legal financial obligations (LFOs).

We affirm Brooks' convictions.  We also remand for the trial court to resentence Brooks on his second degree identity theft conviction so that the combined term of confinement and community custody does not exceed 60 months and to strike the $1,500 LFO for trial counsel

compensation, the $200 criminal filing fee, and the $100 DNA (deoxyribonucleic acid) collection fee.

FACTS

On April 25, 2016, Steven Coe saw an unknown woman enter the home of Jennifer Shanburn and Ricky Lynn Jones while they were at work. After a few minutes, Coe saw a red Nissan Pathfinder pull into Shanburn and Jones' driveway, at which point the woman came out of the house to speak with the man driving the car.[1] The woman then went back into the house, and a few minutes later, she and another man came out with a flat-screen television and "an armload of stuff," and loaded them into the car. Verbatim Report of Proceedings (VRP) (Vol. II) at 251-53. After they finished loading the car, they got into it and the three left the area. Coe saw the burglars make only one trip into the house. Coe took several photographs with his phone as the incident was occurring and called the police after the car drove away. Coe could not see the driver of the Pathfinder very well, but was able to take a partial picture of the driver's face.

Officer Jeffery Thiry responded to Coe's 911 call. Thiry viewed the photographs that Coe had taken on his cellphone and asked Coe to send him copies. By zooming in on one of the photographs using his laptop, Thiry was able to identify the Pathfinder's license plate number.

Thiry gave the information provided by Coe to Officer Jared Tiffany, who began looking for the Pathfinder. Tiffany went to the home of Jamal Block, the registered owner of the Pathfinder, and spoke with Block and Michelle Killgore. Block directed Tiffany to Brooks' home.

---

[1] Although Coe testified that the car was a Chevy Blazer, other witnesses identified the car as a Nissan Pathfinder.

The police obtained a warrant to search Brooks' home and recovered several items that Shanburn and Jones reported stolen, such as a Samsung television, a PlayStation, and several bags. The police also found a bag with documents containing Shanburn's and Jones' personal information, such as medical documents, tax papers, bank statements, and Jones' driver's license. According to Jones, the financial documents were normally kept in his bedroom or in the kitchen with the other mail, and his driver's license was kept in his dresser drawer.

The State charged Brooks with one count of residential burglary as an accomplice and one count of second degree identity theft.

At trial, Thiry testified that the driver of the Pathfinder in Coe's photographs appeared to be "a bald black male." VRP (Vol. II) at 195. Brooks is African American. Brooks' counsel objected to Thiry's description, stating, "I'm going to object on foundation grounds for testimony about photos that have not been admitted or adequate foundation being laid," but the court overruled the objection. VRP (Vol. II) at 194-95. Thiry also testified that the coat Brooks was wearing when he was arrested appeared to be the coat that the driver of the Pathfinder was wearing in Coe's photograph. Defense counsel objected:

> Your Honor, I will object to this. We don't have these photos. He's testifying about photos and what appears to be his opinion as to what the photos depict. I'm going to object and move to strike that testimony.
> I think the photos ought to be – come in upon proper foundation, and it should be a jury question.

VRP (Vol. II) at 216. The trial court overruled the objection.

On cross-examination, Brooks elicited from Tiffany that at least one of the photographs that Coe had showed him presented a side profile of a male black driver that closely resembled Block. On redirect, the State inquired into Tiffany's impressions of the photograph:

| [Prosecution]: | How much detail is shown in those photographs compared to what you could see in Officer Thiry's phone? |
| [Tiffany]: | Well, there's – it's a decent picture, but it's from a distance. So it's difficult to distinguish individual details of the driver. |
| [Prosecution]: | Okay. And how were you – you said that from – it's taken, obviously, from a distance. And so it's difficult to distinguish features of the driver. How were you able to see those distinguishing features? |
| [Defense]: | Your Honor, I'm going to object. We're not – he's asking to testify about a thing that is – that happened in the field. It's not before the jury or the Court. And so – |
| [Prosecution]: | Goes – |
| [Defense]: | – there isn't a foundation. It's not admitted. We do have photographs that have been admitted. |
| . . . . | |
| [Court]: | Overruled. |

VRP (Vol. III) at 384-87. The prosecutor then elicited from Tiffany that he was able to see those distinguishing features on Officer Thiry's phone because it was zoomed in and that the individual depicted resembled Brooks, as well as Block.

The State also called Detective Thomas Williams to testify about some of the items found during the search of Brooks' home. Williams testified that he had investigated close to 1,000 property crimes in the past 16 years, including crimes involving bank statements being taken from a residence or mailbox. Williams explained,

It's common practice that we come across documents that are stolen during the course of a burglary, especially financial documents, credit cards, ID [(identification)] cards, passports, mail, anything with somebody's name on there that's used to facilitate future crimes.

VRP (Vol. IV) at 603. Defense counsel objected to this statement on the grounds that it violated the court's order on a prior motion in limine. The court sustained the objection outside the presence of the jury. Defense counsel did not move to strike Williams' statement.

In closing argument, the State urged the jury that it could infer Brooks' intent to commit a crime using the victims' financial information:

> How do we know that [Brooks acted with intent to commit a crime]? How do we infer what his objective or purpose was? Well, what other purpose would you have of obtaining that specific type of information? If you were to go to a bank or to anywhere else, one of the things that they're going to ask for, if you want any information about an account, they want an ID. They want your date of birth. They want Social Security numbers. All of that information was available to Mr. Brooks at the time that he obtained or possessed that information.
> You can infer from that, if you believe that the evidence supports such an inference, that it was possessed with the intent to commit any crime.

VRP (Vol. V) at 657-58.

The jury found Brooks guilty of residential burglary and second degree identity theft.

The trial court imposed a 72-month sentence for the residential burglary conviction, and 50 months, with an additional 12 months' community custody, for the second degree identity theft conviction, to be served concurrently. The court also inquired into Brooks' ability to pay LFOs:

> Court:      In terms of – did you have a job, sir, prior to –
>
> [Brooks]:      Yes. I worked remodeling homes.
>
> Court:      Okay. And were you doing that at the time?
>
> [Brooks]:      At the time, I was – wasn't working when it happened; but, yes, I was working.
>
> Court:      Well, the fact that you're going to be on a DOSA and you will be out a little bit sooner than if you were not on a DOSA, I am going to impose

the [$]1500 DAC [(Department of Assigned Counsel)] recoupment. You will need to pay that, and that's for your attorney's time.

I am not hearing that you would not be able to be gainfully employed back in that line of work. When you are out, is there anything else that I would need to know that would indicate that you would not be available to obtain any type of employment when you got out, sir?

[Brooks]:     Well, hopefully I will be able to get employment. Definitely will be seeking employment.

Court:     Okay. Well, I think that you need to be paying that as part of your paying the $1500 so I will require that.

Suppl. VRP (Dec. 2, 2016) at 21-22. The trial court also required Brooks to pay a $200 criminal filing fee and a $100 DNA collection fee, among others.

Brooks appeals his conviction, sentence, and imposition of the $200 criminal filing fee, the $100 DNA collection fee, and the $1,500 LFO for trial counsel compensation.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Brooks argues that the State did not present sufficient evidence for a jury to convict him of second degree identity theft. We disagree.

A.     Legal Principles and Standard of Review

In evaluating the sufficiency of the evidence, we view the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Mines*, 163 Wn.2d 387, 391, 179 P.3d 835 (2008). A challenge to the sufficiency of the evidence admits the truth of the State's evidence. *Id*. We do not review credibility determinations, which are reserved for the trier of fact. *Id*. We have also explained that the knowledge element of an offense "may be inferred when the defendant's conduct indicates the requisite knowledge as 'a matter of logical

6

probability.'" *State v. Warfield*, 119 Wn. App. 871, 884, 80 P.3d 625 (2003) (quoting *State v. Stearns*, 61 Wn. App. 224, 228, 810 P.2d 41 (1991)). Furthermore, we consider direct and circumstantial evidence equally reliable in evaluating the sufficiency of the evidence. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010).

> Under former RCW 9.35.020 (2008)[2]:
>
> (1) No person may knowingly obtain, possess, use, or transfer a means of identification or financial information of another person, living or dead, with the intent to commit, or to aid or abet, any crime.
> . . . .
> (3) A person is guilty of identity theft in the second degree when he or she violates subsection (1) of this section under circumstances not amounting to identity theft in the first degree.

B.      Knowing Possession

Brooks contends that the State did not present sufficient evidence that he knowingly possessed a means of identification or financial information of another person. He argues that the evidence is insufficient because the State did not provide any evidence that he looked into the bag containing Shanburn's and Jones' financial information and identification that was recovered during the execution of the search warrant.

In *Warfield*, we considered whether the State had produced sufficient evidence for a jury to find that the defendant knowingly possessed a firearm. 119 Wn. App. at 884-85. We determined that the evidence, while circumstantial, was sufficient to sustain the defendant's conviction because:

> [A] rational jury could conclude that Warfield knowingly possessed the firearm. Officers found the firearm in Warfield's bedroom closet, which was inside the apartment that Warfield leased and was currently, though possibly sporadically,

---

[2] RCW 9.35.020 was amended in 2016, after Brooks was charged. However, the relevant provisions were unaffected by the amendment.

residing at; and the evidence shows that the bedroom and closet were filled with Warfield's personal effects.

*Id.* at 885.

In the present case, the jury heard evidence that soon after the burglary, the bag containing the victims' identification and financial information was found in Brooks' home, along with several other pieces of property taken during the burglary. Some of the documents recovered, such as Jones' driver's license and the tax information, were easily recognizable as identification or financial information through even a cursory examination. In addition, as discussed below in Part I. C., the evidence also shows that these documents had been specifically selected as part of the theft. Therefore, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Brooks knowingly possessed another person's identification or financial information based on when the information was recovered, where the information was recovered, and the fact that the documents were readily identifiable as identification or financial information.

C.    Intent

Brooks also maintains that the State did not produce sufficient evidence that he intended to commit any crime as part of the second degree identity theft charge. We disagree.

Our Supreme Court has held that for "crimes where possession and intent are elements of the crime, Washington courts do not permit inferences based on naked possession." *State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013). "'[I]ntent to commit a crime may be inferred if the defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability.'" *Id.* (quoting *State v. Woods*, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991)). Possession alone is not sufficient to infer intent, but possession together with

"'slight corroborating evidence'" can be. *Id.* (quoting *State v. Esquivel*, 71 Wn. App. 868, 870, 863 P.2d 113 (1993)).

That corroborating evidence is present. The record shows that selected items containing personal and financial information, including medical documents, tax papers, bank statements, and Jones' driver's license, were taken from Shanburn and Jones' house and were recovered in Brooks' house. Jones testified that he kept his financial documents in his bedroom or in the kitchen with the other mail, and his driver's license was kept in his dresser drawer. A rational jury could find beyond a reasonable doubt that the fact that these documents were individually gathered, placed in a bag, and carried away suggests an intent to select and specifically take those documents containing personal and financial information in order to later use the information.

The specific selection of personal and financial documents constitutes corroborating evidence that, in addition to evidence of possession, is sufficient to show intent. *See Vasquez*, 178 Wn.2d at 8. We accordingly hold that the State presented sufficient evidence for a jury to find beyond a reasonable doubt that Brooks intended to commit a crime with the victim's identification and financial information.

II. EVIDENTIARY CHALLENGES

Brooks argues the trial court made several errors in ruling on evidentiary challenges. We disagree.

A.    Legal Principles and Standard of Review

Interpretation of the rules of evidence presents a question of law that we review de novo. *State v. Griffin*, 173 Wn.2d 467, 473, 286 P.3d 924 (2012). "'Once the rule is correctly

interpreted, the trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion.'" *Id.* (quoting *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003)).

A trial court abuses its discretion if its decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons. *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003). A decision is based on untenable grounds or made for untenable reasons if it rests on facts unsupported by the record or was reached by applying the wrong legal standard. *Id.* A decision is manifestly unreasonable if the court, despite applying the correct legal standard to the supported facts, reaches an outcome that is outside the range of acceptable choices, such that no reasonable person could arrive at that outcome. *Id.* A court's exercise of discretion is unreasonable when it is premised on a legal error. *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). The trial court's failure to enforce the requirements of a rule of evidence also constitutes an abuse of discretion. *Griffin*, 173 Wn.2d at 473.

B.      Best Evidence Rule

Brooks argues that the trial court erred by allowing Thiry and Tiffany to testify about their observations of Coe's zoomed-in photographs in violation of the best evidence rule. Washington's best evidence rule states, "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by rules adopted by the Supreme Court of this state or by statute." ER 1002.

1. Waiver of challenge[3]

At the outset, we consider whether Brooks waived his best evidence challenges by failing to object on this basis at trial. We review de novo whether a party has preserved an issue for appeal. *State v. Fenwick*, 164 Wn. App. 392, 398, 264 P.3d 284 (2011).

Generally, a party waives an evidentiary error by failing to object during trial. *State v. Finch*, 137 Wn.2d 792, 819, 975 P.2d 967 (1999). "A party may assign evidentiary error on appeal only on a specific ground made at trial." *State v Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). We examine the propriety of an evidentiary ruling on appeal if the "specific basis for the objection is 'apparent from the context.'" *State v. Braham*, 67 Wn. App. 930, 935, 841 P.2d 785 (1992) (quoting *State v. Pittman*, 54 Wn. App. 58, 66, 772 P.2d 516 (1989)).

Brooks asserts that his counsel's objection to Thiry's testimony about the coat Brooks was wearing should be interpreted as an objection under the best evidence rule. As part of his objection, defense counsel stated, "We don't have these photos. . . . I think the photos ought to be – come in upon proper foundation, and it should be a jury question." VRP (Vol. II) at 216.

Brooks also argues that his counsel's objection to Thiry's testimony that the driver of the Pathfinder was a bald, black male should be interpreted as an objection under the best evidence rule. As part of this objection, counsel stated, "I'm going to object on foundation grounds for testimony about photos that have not been admitted or adequate foundation being laid [sic]." VRP (Vol. II) at 194.

---

[3] Although Brooks mentions several instances where his codefendant's counsel objected, those objections are insufficient to preserve those evidentiary issues for review in Brooks' appeal. *See State v. Davis*, 141 Wn.2d 798, 850, 10 P.3d 977 (2000) ("Appellant cannot rely upon the objection of a codefendant's counsel to preserve an evidentiary error on appeal.").

Although Brooks' counsel did not use the phrase "best evidence" or mention ER 1002, the references to the photographs could reasonably be interpreted as arguing that the State was required to put the photographs described by Thiry into evidence. Therefore, Brooks' counsel made sufficiently specific objections to permit appellate review of this best evidence challenge.

Brooks also contends that his counsel's objection to Tiffany's description of the driver in the zoomed-in photograph should be interpreted as an objection under the best evidence rule. As part of his objection, Brooks' counsel stated, "[H]e's asking to testify about a thing that is – that happened in the field. . . . [T]here isn't a foundation. It's not admitted. We do have the photographs that have been admitted." VRP (Vol. III) at 384-85.

In contrast to counsel's objection to Thiry's testimony, the mention of photographs already admitted into evidence suggests that the objection was not based on the best evidence rule, but rather on lack of foundation. Therefore, we conclude that Brooks' counsel did not make a sufficiently specific objection to permit appellate review of his best evidence challenge to Tiffany's testimony. Therefore, Brooks has waived this challenge.

2. Photographs

Brooks maintains that the trial court abused its discretion by permitting Thiry to testify about the contents of Coe's zoomed-in photographs that depicted the driver of the Pathfinder and what the driver was wearing without the photographs being admitted into evidence. The trial court, however, admitted copies of Coe's photographs into evidence at defense counsel's request. Brooks appears to argue that the State was required to provide zoomed-in versions of Coe's photographs, similar to the manner in which Thiry viewed the photographs on his laptop. We disagree.

ER 1002 requires the "original" photograph be admitted in order to prove the photograph's content. ER 1001(c) states, in part, "An 'original' of a photograph includes the negative or any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an 'original.'" ER 1001(d) also defines a "duplicate" in relevant part as "a counterpart produced by the same impression as the original . . . including enlargements and miniatures." Under ER 1003, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

Coe took photographs of the burglary with his phone. Defense counsel confirmed with Coe that the printouts of his photographs that were admitted into evidence were accurate depictions of the photographs he took with his phone. The printout copies of Coe's photographs are originals under ER 1001(c) and were admitted into evidence at trial. A zoomed-in copy of the photograph would simply be an enlargement of the original, and so would be a duplicate under ER 1001(d). The absence of a zoomed-in copy therefore would not violate ER 1002.

C.      Opinion Testimony

Brooks argues that the trial court abused its discretion by allowing several of the State's witnesses to give improper opinion testimony.[4] We disagree.

---

[4] Brooks also argues that Williams gave improper profile testimony, and that this argument is preserved through his co-defendant's counsel's objection at trial. As explained above, a defendant may not rely on his co-defendant's objection to preserve an evidentiary issue for appeal. *Davis*, 141 Wn.2d at 850. Therefore, we decline to consider this argument because he did not object on this basis at trial.

13

A lay witness may offer opinions or inferences that are: (1) based on rational perceptions, (2) helpful to the jury, and (3) not based on scientific or specialized knowledge. *State v. Montgomery*, 163 Wn.2d 577, 591, 183 P.3d 267 (2008) (citing ER 701). The live testimony of a law enforcement officer may be particularly influential because an officer frequently carries an "'aura of special reliability and trustworthiness.'" *State v. Demery*, 144 Wn.2d 753, 763, 30 P.3d 1278 (2001) (quoting *United States v. Espinosa*, 827 F.2d 604, 613 (9th Cir. 1987)).

1. Thiry's Testimony

Brooks argues that Thiry gave improper opinion testimony by testifying that Brooks was wearing the same coat as the driver of the Pathfinder when he encountered him at police headquarters.

A lay witness may offer opinion testimony as to the identity of a person in a photograph, but only if "'there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury.'" *State v. George*, 150 Wn. App. 110, 118, 206 P.3d 697 (2009) (quoting *State v. Hardy*, 76 Wn. App. 188, 190, 884 P.2d 8 (1994)). A witness may not offer an opinion that a defendant is depicted in a photograph if the witness's "knowledge of defendant's appearance placed them in no better position to make that critical determination." *State v. Jamison*, 93 Wn.2d 794, 799, 613 P.2d 776 (1980). That is, when the defendant is present at trial, the photographs are admitted into evidence, and the witness has no special knowledge of the defendant, a witness's opinion that a defendant is depicted in a photograph is "an impermissible invasion of the jury's province." *Id.* However,

our Supreme Court has explained that a witness may testify about whether a defendant wore

similar clothing to a suspect depicted in a photograph:

> A witness with knowledge of a defendant's appearance at or about the time the surveillance photographs were taken may state whether the person in the photograph was wearing clothing similar to that worn or owned by the defendant. In such a case, the witness has special knowledge concerning the subject matter of the testimony beyond that possessed by the jury. Since such perception and knowledge are not directly available to the fact finder, opinion testimony based thereon does not impinge upon the jury's province.

*Id.* at 799-800 (citation omitted).

Thiry testified that when Brooks was arrested, Brooks was wearing a jacket that

"appeared to be the coat that the driver of the Pathfinder was wearing from the picture that Mr.

Coe provided." VRP (Vol. II) at 215-16. This statement goes to Thiry's special knowledge

about the clothing Brooks was wearing when he was arrested. Because the jury was not in a

position to know Brooks' appearance at the time of his arrest, this statement is permissible

opinion testimony. Brooks' argument fails.

Brooks also asserts that Thiry gave improper opinion testimony by testifying that he

thought the driver of the Pathfinder was a bald, black male. Brooks did not object to this

testimony at trial on the grounds that it would have been an improper opinion, but argues that we

should consider his argument because his objection at trial would have been futile.[5]

We conclude that it would not have been futile for Brooks to object. Brooks appears to

argue that because the trial court allowed Thiry's testimony regarding Brooks' jacket, it would

---

[5] The cases cited by Brooks concern challenges to a trial court's jury instructions and prosecutorial misconduct, not evidentiary challenges. *State v. McCreven*, 170 Wn. App. 444, 473, 284 P.3d 793 (2012) (prosecutorial misconduct); *State v. Cantabrana*, 83 Wn. App. 204, 208, 921 P.2d 572 (1996) (jury instruction).

have been futile to object to the statement regarding the characteristics of the driver. However, Brooks has not demonstrated that an objection to Thiry's testimony about the driver's characteristics would have been futile. Indeed, Thiry testified about the appearance of the driver *before* he testified about Brooks' jacket, so there was no reason for Brooks to believe that the court would not have considered an objection to Thiry's testimony about the driver. Because Brooks does not show an objection would have been futile, he has not preserved this claimed error for review on appeal.

2. Tiffany's Testimony

Brooks contends that Tiffany gave improper opinion testimony by testifying that the driver of the Pathfinder in Coe's photograph resembled Brooks.[6] We disagree.

Under the open door rule, "[a] party's introduction of evidence that would be inadmissible if offered by the opposing party 'opens the door' to explanation or contradiction of that evidence." *State v. Ortega*, 134 Wn. App. 617, 626, 142 P.3d 175 (2006) (quoting *State v. Avendano-Lopez*, 79 Wn. App. 706, 714, 904 P.2d 324 (1995)). This rule "is intended to preserve fairness" by preventing the introduction of one-sided testimony that the opposing party has no opportunity to rebut. *Avendano-Lopez*, 70 Wn. App. at 714.

Brooks' counsel cross-examined Tiffany and asked him whether he had concluded in his initial report that the driver of the Pathfinder resembled Block, the registered owner of the Pathfinder. Tiffany responded affirmatively. On redirect, the State elicited testimony that Tiffany also thought that the driver of the Pathfinder resembled Brooks. Under the open door

---

[6] As noted above, defense counsel's objection referencing the photographs is sufficiently specific to permit review of his challenge to Tiffany's opinion testimony.

rule, Brooks cannot now argue that the trial court erred by permitting Tiffany's testimony regarding the identity of the driver after his counsel had asked Tiffany about his opinion on the same issue. Brooks' argument fails.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Brooks asserts that he received ineffective assistance of counsel when his trial attorney failed to ask the trial court to strike Williams' testimony after the court sustained an objection to that testimony outside the presence of the jury.[7] Brooks had objected to Williams' testimony that "[i]t's common practice that we come across documents that are stolen during the course of a burglary, especially financial documents, credit cards, ID cards, passports, mail, anything with somebody's name on there that's used to facilitate future crimes." VRP (Vol. IV) at 603. We agree that counsel's performance was deficient, but Brooks fails to show any prejudice as a result of counsel's performance.

A.      Legal Principles and Standard of Review

To establish ineffective assistance of counsel, Brooks must demonstrate that: (1) his counsel's performance was deficient in that it fell below an objective standard of reasonableness under the circumstances and (2) he was prejudiced as a result of counsel's performance. *State v. Larios-Lopez*, 156 Wn. App. 257, 262, 233 P.3d 899 (2010). A defendant is prejudiced by counsel's deficient performance if, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. *State v. McFarland*, 127 Wn.2d 322,

---

[7] Brooks also argues that the trial court improperly admitted this testimony. Because his objection was sustained, there was no error by the trial court. We therefore consider only his argument in the alternative: that his counsel's failure to ask the court to strike Williams' testimony constituted ineffective assistance of counsel.

335, 889 P.2d 1251 (1995). To overcome the presumption that defense counsel's representation was effective, Brooks must demonstrate that there was no legitimate or strategic reason for defense counsel's conduct. *Id.* at 336.

B.      Failure to Move to Strike

Williams testified that it was common to find identification and financial information taken during the commission of a burglary that is used to facilitate future crimes. Brooks' counsel objected that Williams' testimony was improper opinion testimony and the trial court sustained the objection outside the presence of the jury. Counsel did not move to strike the testimony after the trial court sustained the objection, and the court did not instruct the jury to disregard the testimony. "When an objection is sustained with no further motion to strike the testimony and no further instruction for the jury to disregard the testimony, the testimony remains in the record for the jury's consideration." *State v. Stackhouse*, 90 Wn. App. 344, 361, 957 P.2d 218 (1998).

The trial court's ruling sustaining the objection was outside the presence of the jury, so the jury did not hear that the objection had been sustained. Without a motion to strike, this left the testimony that had been ruled inadmissible available for the jury's consideration under *Stackhouse*. Having recognized the improper nature of the testimony and having made an objection, there was no legitimate tactical or strategic reason for counsel to allow the testimony to be considered by the jury after the objection was sustained. Therefore, we hold that defense counsel was deficient.

Although Brooks has established deficient performance, he does not show that he was prejudiced in light of the strength of the State's case against him. As discussed above, the fact

that documents selected from Shanburn and Jones' house containing their personal and financial information were found in Brooks' home was sufficient on its own to support the jury's finding that he intended to commit a crime with that information. With this strong evidence apart from Williams' testimony supporting conviction, we hold that Brooks was not prejudiced.

## IV. CUMULATIVE ERROR

Brooks argues that cumulative error deprived him of a fair trial. Under the cumulative error doctrine, "a defendant may be entitled to a new trial when cumulative errors produce a trial that is fundamentally unfair." *State v. Emery*, 174 Wn.2d 741, 766, 278 P.3d 653 (2012). Reversal is not required where the errors are few and have little to no effect on the outcome of the trial. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000).

As discussed above, we hold against Brooks on his claims of insufficient evidence and evidentiary error. On his claim of ineffective assistance of counsel, we hold that counsel performed deficiently in not moving to strike, but that Brooks did not suffer prejudice from it. Hence, there is no cumulative error.

## V. SENTENCING ERROR

Brooks argues that the trial court erred by imposing a combined total sentence of 62 months (50 months in custody with 12 months of community custody) for his second degree identity theft conviction, which was in excess of the statutory maximum. The State concedes that Brooks' sentence for this conviction exceeds the statutory maximum. We agree that the trial court erred.

We review erroneous sentencing claims de novo. *State v. Hernandez*, 185 Wn. App. 680, 688, 342 P.3d 820 (2015). A trial court errs when it imposes a total term of confinement and

19

community custody exceeding the statutory maximum. *State v. Boyd*, 174 Wn.2d 470, 473, 275 P.3d 321 (2012). Second degree identity theft is a class C felony. Former RCW 9.35.020(3). The maximum sentence for a class C felony is 5 years or 60 months. RCW 9A.20.021(1)(c).

In *Boyd*, our Supreme Court reasoned that "the trial court, not the Department of Corrections, [is] required to reduce [the defendant]'s term of community custody to avoid a sentence in excess of the statutory maximum." 174 Wn.2d at 473. We accordingly remand to the trial court to resentence Brooks on his conviction of second degree identity theft so that his aggregate term of confinement and community custody for that conviction does not exceed 60 months.[8]

## VI. LFOs

Brooks argues, alternatively, that (1) because the trial court declared him indigent, the 2018 amendments to RCW 10.01.160(3) bar imposition of the $1,500 discretionary LFO related to his trial attorney's compensation and (2) the trial court failed to properly inquire into his ability to pay that LFO under *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018). Brooks also challenges the imposition of the $200 criminal filing fee and the $100 DNA collection fee.

The State argues that Brooks has waived his challenge to the imposition of LFOs by failing to object at trial. Although RAP 2.5(a) generally precludes review of an error that is raised for the first time on appeal, the rule permits us to exercise discretion to reach such issues. In *State v. Blazina*, our Supreme Court exercised its discretion under RAP 2.5(a) to reach the

---

[8] We note that because Brooks' sentences run concurrently, his actual term of confinement of 72 months based on his conviction for residential burglary will remain unaffected.

merits of an LFO issue raised for the first time on appeal. 182 Wn.2d 827, 835, 344 P.3d 680 (2015). We likewise exercise our discretion to reach this LFO issue for the first time on appeal.

In 2018 the legislature amended RCW 36.18.020 to bar imposition of the $200 criminal filing fee on those who were indigent at the time of sentencing under RCW 10.101.010(3)(a)-(c). LAWS OF 2018, ch. 269, § 17. RCW 10.101.010(3) defines indigency for the purpose of appointing counsel in criminal cases, among other matters. The sentencing court deemed Brooks indigent for the purpose of appointing appellate counsel. In its supplemental brief of December 3, 2018, the State acknowledged this and conceded that the $200 criminal filing fee should be stricken for that reason under the 2018 statute. The State is correct in its reading of RCW 36.18.020, and we accept its concession.

The $1,500 charge for trial attorney compensation is a discretionary LFO. The 2018 statute amended RCW 10.01.160 to bar the imposition of discretionary LFOs on those who were indigent at the time of sentencing under RCW 10.101.010(3)(a)-(c). LAWS OF 2018, ch. 269, § 6. As noted, RCW 10.101.010(3) defines indigency for the purpose of appointing counsel in criminal cases. The sentencing court deemed Brooks indigent for the purpose of appointing appellate counsel. Therefore, RCW 10.01.160 bars imposition of the $1,500 LFO on Brooks.

Finally, the 2018 statute barred imposition of the $100 DNA collection fee if the State had already collected the offender's DNA as the result of a previous conviction. LAWS OF 2018, ch. 269, § 18. In its supplemental brief of December 3, 2018, the State acknowledged that Brooks' DNA had already been collected and asked that this LFO also be stricken. We agree with the State.

No. 49810-3-II

We accordingly remand for the trial court to strike the $1,500 LFO for trial counsel reimbursement, the $200 criminal filing fee, and the $100 DNA collection fee.

CONCLUSION

We affirm Brooks' convictions. We also remand to the trial court (1) to resentence Brooks on his conviction of second degree identity theft so that the combined term of confinement and community custody does not exceed 60 months and (2) to strike the $1,500 LFO for trial counsel reimbursement, the $200 criminal filing fee, and the $100 DNA collection fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, J.

We concur:

Lee, A.C.J.

Melnick, J.

22