[No. 26285-8-I.   Division One.   November 4, 1991.]

THE STATE OF WASHINGTON, *Respondent*, v. WADE WOODS, *Appellant*.

*Colleen E. O'Connor* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Lisa Johnson, Deputy,* for respondent.

PER CURIAM. — Wade Woods appeals from a juvenile court order of disposition following conviction of second degree burglary. The matter was referred to the panel for accelerated disposition pursuant to RAP 18.12.

Diana Bullis testified that on January 26, 1990, her 15-year-old son, Jeff, was living with another family because of problems the two of them were having. She had told Jeff that he was permitted to enter her apartment only when she was home. All of his possessions remained in his bedroom in her home. Although she was normally gone from the home between 6 a.m. and 4 p.m., she stayed home on January 26 due to illness. She testified that she had locked the door and Jeff no longer had a key. At about 9 a.m., she heard a loud, crashing noise, and when she got up she saw a part of the doorframe boards flying into the living room. She saw Wade and Jeff standing just inside the door. Wade was wearing boots with steel toes. She was angry and threatened to call the police. The boys looked surprised to see her and fled.

Wade testified in his own defense. He stated that on the morning of the incident, he and another friend were on their way to Southcenter when it began raining. They also realized they did not have bus fare. Jeff decided to stop at

his mother's house to get a jacket. Jeff opened one of the locks with a key but the other lock remained locked. Wade testified that Jeff said all he had to do was give the door a push or a slight kick and that he had done this before. The boys then entered the apartment. It is unclear from the record who actually kicked in the door. When Jeff's mother yelled at them, they left without getting the jacket.

Wade first contends that he cannot properly be convicted of burglary because his entry was not unlawful. He contends that Bullis told the boys they could not enter unless she was present; therefore, because she was present that morning, their entry was lawful. Similarly, he contends that Jeff's entry was privileged and Jeff had invited him to enter. These contentions are without merit.

■■ The test of sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of second degree burglary beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). Wade was charged under former RCW 9A.52.030(1), which provides:

> A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle.

The State bears the burden of proving the entry was unlawful, *i.e.*, the person was not licensed, invited or otherwise privileged to enter or remain. RCW 9A.52.010(3); *State v. Bergeron*, 105 Wn.2d 1, 16, 711 P.2d 1000 (1985).

■ A parent must expressly and unequivocally revoke the child's privilege of entry and provide an alternative means of shelter before the child can be convicted of burglary for entering the parental home. *State v. Howe*, 116 Wn.2d 466, 805 P.2d 806 (1991).

Here, Jeff was instructed not to enter unless his mother was home. She had expressly revoked permission for him to enter unless she was at home, and she had made appropriate alternative living arrangements. *See State v. Jensen*,

consolidated with *State v. Howe, supra* at 475-76. Although Jeff claimed he spent the night at his mother's home, the court did not believe him. The manner of the boys' entry and their surprise at finding her there support the conclusion that they thought she was not home. Furthermore, even if Jeff had permission to enter, he clearly did not have permission to kick down the door. Under all these circumstances, including the amount of force used, there was sufficient evidence from which the court could find beyond a reasonable doubt that Wade entered unlawfully, *i.e.*, without permission.

Wade also contends there was no evidence of an intent to commit a crime as required under RCW 9A.52.030(1).[1] The mother testified that nothing was taken as a result of the entry. Without citing authority, the State argues that an intent to commit a crime may be inferred from the amount of force the boys used in entering.

█ The intent to commit a crime may be inferred if the defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability. *State v. Bergeron, supra* at 4. Unlike many burglary cases, there is no evidence here of items actually stolen. The only direct evidence of the boys' intent came from Wade's testimony. He stated that they were going to take a bus and then realized they did not have enough money. He also stated that it had begun raining and Jeff wanted a jacket. He stated that returning to the house was for the purpose of obtaining the jacket. Evidence in the record of an intent to commit a crime is tenuous at best. Jeff's belongings were still in the house. Even if he were actually going after money, there is no evidence that he had no money of his own in the house. Similarly, their fleeing when Jeff's mother yelled at them can as well be explained by fear of her anger at their forceful entry. In sum, infer-

---

[1] Wade also assigns error to the court's failure to enter a finding of fact on intent to commit a crime. In view of our disposition of this case, we need not reach this issue.

ence of intent to commit a crime does not flow as a matter of logical probability from these circumstances.

Intent may not be inferred from evidence that is "patently equivocal". *State v. Bergeron, supra* at 20; *State v. Couch*, 44 Wn. App. 26, 32, 720 P.2d 1387 (1986). Under the circumstances of this case, Wade's conduct is equivocal. The State appears to rely on the fact of the amount of force used in the entry. In these circumstances, where the son's belongings remained in the house, the degree of force is not sufficient evidence of intent to commit a crime. We hold that the evidence does not justify a finding *beyond a reasonable doubt* that Wade had the requisite intent to commit a crime in the house.

Although there is not sufficient evidence to support the conviction for burglary, there is sufficient evidence of intent to support a conviction on the lesser included offense of first degree criminal trespass. RCW 9A.52.070. *State v. Soto*, 45 Wn. App. 839, 727 P.2d 999 (1986). We hereby reverse the conviction and remand for entry of an amended order of disposition on first degree criminal trespass.