

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | |
| | ) | No.  35269-2-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EUGENIA ANN REUTER, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. —Eugenia Ann Reuter appeals her conviction at jury trial for residential burglary.  She contends the evidence was insufficient to support the conviction.  We affirm.

FACTS AND PROCEDURE

The State charged Ms. Reuter with residential burglary, third degree theft, and making a false or misleading statement to a public servant, all stemming from her intrusion at the trailer residence of Christopher Berentson.  The facts are related from the trial testimony.

Mr. Berentson (and his dog) resided alone in Spokane Valley in his 28-foot gooseneck, fifth wheel trailer situated on a back portion of a one-acre commercial lot owned by his employer, Continental Contracting.  The trailer's amenities included a

kitchen, dining and sleeping areas, and a partial living room with a couch and chair. It had side and back windows, and one exterior door with deadbolt and doorknob locks. A former Continental employee named "John" once lived in a similar trailer on the same site, but removed it a week after Mr. Berentson brought his trailer in May 2016.

Continental's lot contained machinery, two shops, and two mobile trailers for offices. The property was protected by an eight-foot high chain link fence topped with three-strand barbed wire, and was posted with multiple no trespassing signs. The sole entry gate included a sign requiring visitors to check in with the office. The gate was open during business hours and 15 to 20 employees could be present. After hours, a key was necessary to enter the property.

On September 30, 2016, Mr. Berentson worked all day at an offsite job. He locked his trailer's deadbolt and shut the windows when he left in the morning. Upon returning home that evening, he found a screen removed and window open in the rear portion of the trailer not visible from North Dollar Road—the sole public roadway that borders Continental's property. Mr. Berentson peered inside and saw an unknown woman sitting near the foot of his bed, looking as though she had just awoken. He asked what she was doing in his trailer. She identified herself as "Debra" and asked why she couldn't be there. Report of Proceedings (RP) (Jan. 17, 2017) at 186. Mr. Berentson's dog was laying on the couch, seemingly unfazed by the woman's presence. She opened the trailer door to go outside and Mr. Berentson again asked what she was doing there.

2

She asked if she could stay. He noticed she was wearing black sweatpants and his BMW T-shirt. He also noticed an empty beer can on the ground outside under the door step.

Mr. Berentson told the woman he was going to call law enforcement. She became frantic and stated she "didn't need this right now." RP at 191. She ran quickly from the trailer toward the closed front gate, scaled over the barbed wire fence, and then walked away on North Dollar Road. Mr. Berentson called 911 on his cell phone. He followed the woman on foot—keeping his distance and giving the 911 operator updated locations—until Sheriff's Deputy James Hall contacted her some twenty minutes later on Fancher Road near Sharp. She told the deputy her name was "Babette Grady," with a particular birthdate in 1966. RP at 240. Mr. Berentson arrived on scene and identified her as the intruder wearing his T-shirt. Deputy Hall administered *Miranda*[1] warnings. She waived those rights and admitted she had been inside the trailer. She said she was there to see a person named "George," and asked the deputy, "[s]hould I not be there[?]" RP at 243. He observed her hand bleeding from a recent large cut and summoned medics.

Meanwhile, Mr. Berentson returned to his trailer to find it "trashed" inside, with personal papers, clothing, and food strewn all over. RP at 205. In addition to taking his T-shirt, the woman ate some of his chicken and consumed beers from his refrigerator.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

Deputy Hall soon arrived at the trailer to investigate; the woman remained handcuffed in the back seat of the patrol car. Deputy Hall observed where entry was gained through the back window. He saw empty beer cans, clothes and other items thrown all over the floor, and a partially eaten chicken on the kitchen counter. It appeared to him that someone had gone through the contents of the trailer. Mr. Berentson showed him where the woman had climbed the fence. A piece of black cloth entangled in the barb wire matched a patch of material missing from her sweatpants leg.

Mr. Berentson had never before seen the woman on Continental's property and did not know who she was. She did not ask him about a "George" or if that person was living in the trailer. He knew of no one named "George" who worked for Continental or had lived on the premises. He said the former employee "John" whose trailer was on site was not known as "George." Mr. Berentson did not give the woman permission to be in his trailer or take any of his belongings, nor was he aware of anyone else giving her permission.

Deputy Hall completed his investigation and drove the woman to the hospital for further treatment. Upon leaving, she yelled to Mr. Berentson that she was sorry. Deputy Hall later determined she had given a false name and birthdate and that her true identity was Eugenia Reuter, born in 1971. Mr. Berentson positively identified her in court as the intruder, and likewise identified his T-shirt as the one she took.

4

Ms. Reuter did not testify at trial and the defense did not present any evidence. The jury found her guilty as charged of residential burglary, third degree theft, and making a false or misleading statement to a public servant. It rejected the defense theory presented through cross-examination of the State's witnesses that Ms. Reuter was not guilty of the burglary or theft because her words and actions showed she mistakenly thought she was permitted to enter the trailer and did not believe she was stealing anything inside.[2] The court imposed a 63-month standard range sentence. Ms. Reuter appeals just the burglary conviction.

ANALYSIS

The sole issue is whether the evidence was sufficient to support Ms. Reuter's conviction for residential burglary. In particular she contends the State failed to prove the essential element that she entered Mr. Berentson's trailer with intent to commit a crime therein.

In reviewing a challenge to the sufficiency of the evidence, we view the evidence and all reasonable inferences in a light most favorable to the State to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). A claim of

---

[2] Ms. Reuter claimed during allocution at sentencing that she had been there multiple times to see "John" whose confidentiality she did not want to compromise, and that he had told her the home was her sanctuary. RP (Apr. 20, 2017) at 388. No such evidence was presented at trial.

insufficiency admits the truth of the State's evidence and all reasonable inferences that a trier of fact can draw from the evidence. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Circumstantial evidence and direct evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

"A person is guilty of residential burglary if, with intent to commit a crime against a person or property therein, the person enters or remains unlawfully in a dwelling other than a vehicle." RCW 9A.52.025(1). A person enters or remains unlawfully in a dwelling "when he or she is not then licensed, invited, or otherwise privileged to so enter or remain." RCW 9A.52.010(2). "A person acts with intent or intentionally when he or she acts with the objective or purpose to accomplish a result which constitutes a crime." RCW 9A.08.010(1)(a).

Ms. Reuter contends the mere fact she entered Mr. Berentson's trailer unlawfully did not support an inference that she did so with intent to commit a crime. She likens her case to *State v. Woods*, 63 Wn. App. 588, 821 P.2d 1235 (1991), and *State v. Sandoval*, 123 Wn. App. 1, 94 P.3d 323 (2004)—both involving unlawful entry but lacking inference of intent to commit a crime in the premises.

In *Sandoval*, the defendant kicked open an apartment door. The occupant confronted him and Sandoval gave him a shove. Sandoval was convicted of first degree

burglary. *State v. Sandoval*, 123 Wn. App. at 3. In reversing the conviction on appeal,

this court concluded the evidence did not support a logical inference that Sandoval

intended to commit a crime inside the apartment:

> [T]here is no fact, alone or in conjunction with others, from which entering
> with intent to commit a crime more likely than not could flow. The parties
> were strangers. The assault was a shove after entering. Mr. Sandoval did
> not try to sneak in. He was not wearing burglary-like apparel or carrying
> burglary tools. He did not attempt to flee. [The victim] noted: "It's not like
> he was in a hurry to get out." Mr. Sandoval did not try to take any of [the
> victim]'s property or confess to doing so. The inference of intent to
> commit the crime of first degree burglary does not then flow more probably
> than not from the breaking and entering here.

*State v. Sandoval*, 123 Wn. App. at 5-6 (citations omitted).

In *Woods*, two juveniles went to an apartment where one had formerly lived but

still stored his belongings there. His mother caught the two boys as they kicked in the

door and entered the apartment. They fled the scene. The boys claimed they went to the

apartment to get a rain jacket that belonged to one of them. They did not steal anything

else. *State v. Woods*, 63 Wn. App. at 589-590. The court found it highly plausible that

the boys fled the scene because they feared the mother's anger rather than because of a

foiled criminal plot. *Id.* at 591. The court held the boys' entry to the apartment was

unlawful, but the evidence was insufficient to support an inference of criminal intent

necessary to support the residential burglary conviction. *Id.* at 591-592.

In an attempt to illustrate lack of intent to commit a crime in Mr. Berentson's

trailer, Ms. Reuter argues that she did not try to conceal her presence on the property.

7

Instead, like Sandoval who loudly kicked open a door, she walked onto Continental's property during business hours when there were generally 15 to 20 employees present and strode to the trailer at the back of the property. And like in *Woods*, nothing about her actions clearly indicated she entered the trailer intending to commit a crime once inside. She believed she was at a friend's trailer and felt comfortable enough to don his clothes, help herself to whatever was in the refrigerator, and take a nap—all in the presence of a dog. At some point, she drank a beer outside and then locked herself back in the trailer. Moreover, she did not disturb other items of value in the trailer—a Blu-ray player, a 55-inch television, watches, and pocket change. When asked why she was in the trailer, she queried "[s]hould I not be there[?]" RP at 243. Believing she could be there, but realizing the gravity of her mistake, she apologized to Mr. Berentson as she sat in the patrol car. She concludes that even in the light most favorable to the State, the facts do not prove she intended to commit a crime in the trailer. We disagree.

Ms. Reuter unlawfully entered the locked trailer through a back window obscured from public view. There was no evidence that a person named "George" or anyone else had authority or gave her permission to enter the residence. While remaining inside, and without Mr. Berentson's permission, she consumed his beer, ate his food, took his T-shirt and rummaged through his belongings. Thus, unlike in *Sandoval* and *Woods*, there was direct evidence that Ms. Reuter intended to, and actually did, commit the crime of third

degree theft while unlawfully remaining inside the residence.[3]  Indeed, she was convicted of third degree theft.  A rational trier of fact could find each element of residential burglary beyond a reasonable doubt based on the evidence.  RCW 9A.52.025(1); *State v. Green*, 94 Wn.2d at 221.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Pennell, J.

---

[3] No inference of intent instruction was given in this case.