# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 58061-6-II |
| Respondent, | |
| v. | |
| ANDRIA LYNN RUSSELL, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Andria L. Russell appeals her convictions for eight counts of identity theft in the second degree. She alleges sufficient evidence does not support her convictions because the State failed to prove she possessed another person's identification with the intent to commit a crime. Russell also alleges instructional error and prosecutorial misconduct, and that the trial court erred in imposing a $500 crime victim assessment fee after finding her indigent. We affirm Russell's convictions but remand for the trial court to strike the crime victim assessment fee.

## FACTS

Pierce County Sheriff's Deputy Chad Helligso observed a vehicle matching the description of a recently reported stolen vehicle. He noticed the vehicle did not have license plates and had only a partially legible trip permit. Helligso observed a man stop the vehicle, get out, and then return to the vehicle. Helligso approached the driver and asked if the car belonged to him. The driver claimed he knew nothing about the vehicle and became "somewhat hostile." Rep. of Proc. (RP) (Feb. 28, 2023) at 105.

Helligso then approached the vehicle's passenger, Russell. As he approached, he observed several bags in the vehicle and "a bunch of financial mail, bills and credit card applications" scattered around. RP (Feb. 28, 2023) at 106. Many items were on the floorboard where Russell was sitting. Helligso noticed none of the mail was addressed to the driver or Russell.

Russell stepped out of the car and permitted Helligso to search the vehicle. She told Helligso that all the bags in the vehicle were hers except a black backpack. Inside the bags belonging to Russell, Helligso found more mail and checks. He also found a notebook with "profiles," which Helligso described as handwritten notes, listing several individuals' names, phone numbers, addresses, dates of birth, and social security numbers. RP (Feb. 28. 2023) at 110. A laptop and printer were also located.

The State charged Russell with eight counts of identity theft in the second degree based on documents belonging to eight different people.[1]

During trial, Helligso testified to what he found inside the vehicle. Regarding the numerous checks, Helligso testified that some were endorsed, some were not endorsed, and some were "washed" which means the ink on the amount line and payee line were removed. RP (Feb. 28, 2023) at 123. Regarding the notebook, Helligso testified to the personal information listed in the notebook along with a note stating, "On my flash drive is a way to get cash from the cards." RP (Feb. 28, 2023) at 127. Helligso testified that in his experience investigating fraud and identity theft, he often encountered these types of profile notes, which information was used to falsely open credit card accounts in other people's names. Helligso also testified that he contacted the individuals on the pages to confirm they were real people.

---

[1] The State also charged Russell with possession of a controlled substance based on methamphetamine found inside one of Russell's bags but that charge was later dismissed under *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021).

Six of the eight victims testified on behalf of the State. In each case, the witness viewed information from the notebook, identified the information on that page as their personal data, and confirmed they had not given Russell permission to possess the information. The alleged victims in counts two and six did not appear for trial.

At the close of the State's case, Russell moved to dismiss counts two and six because the two alleged victims did not testify. The State argued that identification from the true owner of the mail is not necessary for identity theft in the second degree; moreover, the State argued that Helligso testified that he contacted the individuals involved and confirmed they were real people. The trial court denied the motion, concluding that Helligso's testimony proved identification of the victims in counts two and six.

During closing arguments, the State argued, "So when we talk about the intent to commit a crime, when we talk about why [Russell] had that information, we have now walked through what that information can be used for, and we've walked through the volume of evidence that shows various ways that that information could be used to commit a crime." RP (Feb. 28, 2023) at 192-93. In rebuttal, in response to Russell's argument that the State was required to prove that Russell actually created the notebook, the State argued, "And nowhere in these instructions does it say I have to prove who created that notebook. I have to prove that she either obtained, possessed, or transferred. . . . I'll submit to you that [Russell] possessed this information. And if she possessed this information, that alone is enough for her to be found guilty, irrespective of who may have created the journal." RP (Feb. 28, 2023) at 203. There was no objection to this argument. The State moved on to reference the jury instructions and the requirement to consider the circumstances as a whole.

The to-convict jury instructions stated that the jury must find that Russell knowingly obtained, possessed, or transferred identification "with the intent to commit any crime." Clerk's Papers (CP) at 37-44. The instructions did not set forth a specific crime. There was no objection to the jury instructions.

During deliberations, the jury inquired: "Did [Helligso] confirm that information listed in evidence for [the two alleged victims who did not testify] were confirmed to be there [sic] information, and permission was not given to have said information?" CP at 48. The trial court answered, "You have all the testimony and exhibits. Please continue your deliberations." CP at 48.

The jury found Russell guilty as charged. Although the trial court found Russell was indigent, it imposed a $500 crime victim assessment fee.

Russell appeals her judgment and sentence.

ANALYSIS

I.    SUFFICIENCY OF THE EVIDENCE

Russell contends that sufficient evidence does not support any of her convictions because the State failed to prove that she intended to commit a crime with the documents located inside the vehicle. Russell further argues that there is insufficient evidence to support counts two and six because the victims did not testify. We disagree with both of Russell's contentions.

A.      Standard of Review

The State must prove all elements of a crime beyond a reasonable doubt. *State v. Crossguns*, 199 Wn.2d 282, 297, 505 P.3d 529 (2022).  Evidence is sufficient to support a conviction if, after viewing evidence in a light most favorable to the State, any reasonable juror could find the elements of the crime beyond a reasonable doubt. *State v. Pinkney*, 2 Wn. App. 2d 574, 579, 411 P.3d 406 (2018).  Challenges to sufficiency of the evidence admit the truth of the State's evidence and all reasonable inferences arising therefrom. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265-66, 401 P.3d 19 (2017).

B.      Legal Principles

A person commits identity theft if he or she "knowingly obtain[s], possess[es], use[s], or transfer[s] a means of identification or financial information of another person . . . with the intent to commit, or to aid or abet, any crime."  RCW 9.35.020(1).  The victim must be a real person. *State v. Fedorov*, 181 Wn. App. 187, 194, 324 P.3d 784 (2014).  A person commits identity theft in the second degree if the crime he or she commits does not exceed $1,500 in value.  RCW 9.35.020(3).

The State need not prove that the defendant intended to commit a specific crime; proof of intent to commit any crime is sufficient. *Fedorov*, 181 Wn. App. at 197.  "When intent is an element of the crime, 'intent to commit a crime may be inferred if the defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability.'" *State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013) (quoting *State v. Woods*, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991)).  Although "naked possession" alone does not permit an inference of intent, "possession together with 'slight corroborating evidence'" can permit an

inference of intent. *Vasquez*, 178 Wn.2d at 8 (quoting *State v. Esquivel*, 71 Wn. App. 868, 870, 863 P.2d 113 (1993)).

      C.     Evidence of Any Crime

Here, Helligso testified regarding the many financial documents on the floorboard where Russell was sitting. Russell permitted Helligso to search the vehicle, including her bags. Helligso found "washed" checks along with a laptop and printer that could be used to fill in the checks. RP (Feb. 28, 2023) at 123. Helligso also found a notebook with "profiles," which the deputy described as handwritten notes, listing several individuals' names, phone numbers, addresses, dates of birth, and social security numbers. RP (Feb. 28, 2023) at 110. Helligso testified that in his experience investigating fraud and identity theft, he often encountered these types of profile notes, which information was used to fraudulently open credit card accounts in other people's names. Helligso further testified to a note in the notebook stating, "On my flash drive is a way to get cash from the cards." RP (Feb. 28, 2023) at 127. This note implies Russell had a way to fraudulently open credit card accounts and take cash advances.

Intent to commit a crime can be inferred by combining Russell's possession of other individuals' financial documents, altered checks with a laptop and computer, a notebook with profile information including a note on how to get cash from credit cards, and Helligso's testimony regarding his experience with fraud and identity theft. *See Vasquez*, 178 Wn.2d at 8. Viewing this evidence in the light most favorable to the State, sufficient evidence supports Russell's identity theft in the second degree convictions.

D.    Counts Two and Six

Russell further argues that because two of the victims did not testify, the State failed to provide sufficient evidence to support the two counts of identity theft related to them. Russell raised this argument below in her motion to dismiss. We review the trial court's decision on a motion to dismiss for abuse of discretion. *State v. Blackwell*, 120 Wn.2d 822, 830, 845 P.2d 1017 (1993). "Discretion is abused when the court's decision is manifestly unreasonable, or is exercised on untenable grounds, or for untenable reasons." *Id.*

To commit identity theft, the identifying information must belong to a specific, real person. *State v. Berry*, 129 Wn. App. 59, 62, 117 P.3d 1162 (2005). In *Berry*, the defendant attempted to use a check listing a real bank account, but a fake name. *Id.* He was charged with identity theft of the fictitious name. The court held that an identity theft victim must be a real person. *Id.*

Russell argues that because two of the victims did not appear at trial, there is insufficient evidence that they are real people. Unlike in *Berry*, there is no evidence that these two victims are fictitious. Moreover, Helligso testified that he contacted the individuals involved and confirmed they were real people. Accordingly, tenable grounds existed for the trial court to deny the motion to dismiss. We hold that sufficient evidence supports counts two and six.

II.    PROSECUTORIAL MISCONDUCT

Russell next contends that the prosecutor improperly argued that the jury could find Russell committed identify theft based on nothing more than mere possession and that this comment was so flagrant and ill-intentioned that it could not be cured by an instruction. We disagree.

Prosecutorial misconduct may deprive a defendant of their constitutional right to a fair trial. *State v. Zamora*, 199 Wn.2d 698, 708, 512 P.3d 512 (2022). To establish prosecutorial misconduct, the defendant must show (1) that the prosecutor made improper comments and (2)

that the comments were prejudicial. *State v. Emery*, 174 Wn.2d 741, 759-60, 278 P.3d 653 (2012). Prejudicial comments are those with a substantial likelihood of affecting the verdict. *Id*. at 760.

We review a prosecutor's comments during closing argument in the context of the entire case. *State v. Thorgerson*, 172 Wn.2d 438, 453, 258 P.3d 43 (2011). Although prosecutors have "wide latitude to argue reasonable inferences from the evidence," they may not misstate the law. *Id*. at 448; *State v. Allen*, 182 Wn.2d 364, 373, 341 P.3d 268 (2015).

Because Russell failed to object at trial, the error she complains of is waived unless she establishes that the misconduct was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. To do so, she must show that (1) no curative instruction would have obviated any prejudicial effect of the misconduct and (2) there is a substantial likelihood that the misconduct affected the jury's verdict. *Id*. at 761. Our primary focus is on whether the prejudice caused by the misconduct could have been cured. *Id*. at 762.

Here, the State commented that it must show Russell had the intent to commit a crime. Later, during rebuttal, the State commented that it must show Russell knowingly obtained, possessed, or transferred another person's means of identification or financial information under RCW 9.35.020(1). The State remarked that it had "to prove that [Russell] either obtained, possessed, or transferred. . . . I'll submit to you that she possessed this information. And if she possessed this information, that alone is enough for her to be found guilty, irrespective of who may have created the journal." RP (Feb. 28. 2023) at 203. Viewed in context, the State argued that as between obtaining, possessing, and transferring, it need only prove one of those actions, and that it had in fact proven possession. The State had already informed the jury that it must prove that Russell had the intent to commit a crime. Moreover, the State's argument was clearly a response

to Russell's suggestion that the State could not prove its case without proving that Russell created the notebook that contained much of the information that pointed to her criminal intent.

Taken as a whole, the State's remarks are not improper and even if they were, they were not so flagrant and ill-intentioned that they could not be cured by an instruction. For this reason, Russell fails to show that she was denied a fair trial based on prosecutorial misconduct.

III.     TO CONVICT INSTRUCTIONS

Russell next contends, for the first time, that she was denied due process because the jury was improperly instructed on the elements of identity theft in the second degree. She argues that the trial court should have instructed the jury on the specific crime she intended to commit. We decline to reach this issue.

"To satisfy due process, to-convict jury instructions must instruct the jury on every essential element of the crime." *State v. Bergstrom*, 199 Wn.2d 23, 38, 502 P.3d 837 (2022). But a defendant who does not object to an instruction in the trial court generally cannot challenge that instruction for the first time on appeal. *State v. Johnson*, 188 Wn.2d 742, 761, 399 P.3d 507 (2017). The exception is when an instructional error is of constitutional magnitude. RAP 2.5(a)(3); *State v. Ackerman*, 11 Wn. App. 2d 304, 309, 453 P.3d 749 (2019). An instructional error is of constitutional magnitude when the jury is not instructed on every element of the charged crime. *State v. Roggenkamp*, 153 Wn.2d 614, 620, 106 P.3d 196 (2005).

Russell did not object to the to convict instructions below. Therefore, we must determine whether the purported error involves a manifest error affecting a constitutional right. As set forth above, identity theft requires knowingly obtaining, possessing, using, or transferring another person's means of identification or financial information, "with the intent to commit, or to aid or abet, any crime." RCW 9.35.020(1). In *Fedorov*, Division One of this court addressed the same

issue Russell raises. There, the court held that the State need not prove that the defendant intended to commit a specific crime; proof of intent to commit any crime is sufficient. 181 Wn. App. at 197. The court relied on the plain language of the identity theft statutes. *Id* . at 199. We agree with Division One's reasoning.

Because Russell does not show a manifest error affecting a constitutional right based on the trial court's failure to instruct the jury on every element of the charged crime, we decline to address this argument further.

IV.    CRIME VICTIM ASSESSMENT

Russell lastly contends that the trial court erred by imposing a $500 crime victim assessment fee. The State concedes the error.

When the trial court sentenced Russell, it was required to impose a victim assessment of $500 under former RCW 7.68.035(1)(a) (2018), regardless of a defendant's indigency. But that statute has since been amended. It now states that courts "shall not impose the [assessment] under this section if the court finds that the defendant, at the time of sentencing, is indigent as defined in RCW 10.01.160(3)." LAWS OF 2023, ch. 449, § 1. The amendment took effect July 1, 2023. LAWS OF 2023, ch. 449, § 27. Although these amendments took effect after Russell's sentencing, they apply to cases pending appeal. *See State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). Therefore, we remand to the trial court to strike the crime victim assessment fee.

CONCLUSION

We affirm Russell's convictions but remand to the trial court to strike the crime victim assessment fee.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Glasgow, J.

Cruser, C.J.