# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  60168-1-II |
| Respondent, | |
| v. | |
| CALE HUNTER BYERS, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Cale H. Byers appeals his conviction for one count of threatening to bomb or injure property.  Byers argues that there was insufficient evidence of a true threat to support his conviction.  He also contends that the trial court abused its discretion when it admitted photos of weapons and anti-abortion pamphlets into evidence.  Finally, Byers argues that his conviction should be reversed because the State committed prosecutorial misconduct.

We hold that there was sufficient evidence of a true threat to support Byers' conviction, the trial court did not abuse its discretion by admitting photos of weapons and anti-abortion pamphlets into evidence, and Byers' prosecutorial misconduct challenge fails.  Accordingly, we affirm Byers' conviction.

FACTS

A.    BACKGROUND

On October 22, 2022, Byers sent a text message to seven members of his church, including his pastor, Robert Lloyd.  The message read:

Planned [P]arenthood doesn't stand a chance. Multiply that by 25 other Christian men, and we could change the west coast[.]

In the same way that you wouldn't preach the gospel to Hitler's gas chamber team, or the nazi cops, you don't preach the gospel to people actively killing other people. You stop them from killing other people[.]

I know you guys all have plenty of weapons. If you're interested in shutting down the clinic, please let me know. Otherwise, what is the purpose of having weapons against a tyrannical government? [T]hey collect dust, and these poor children are being slaughtered daily.

Ex. 1, at 1-3.[1] Byers attached to the text message a photograph of an assault rifle, magazines, and other weapons. Pastor Lloyd immediately reported the text message he received from Byers to the Battleground police.

The police finally located Byers in Ridgefield, Washington in December 2022, and interviewed Byers at his workplace. Pursuant to a search warrant, police officers searched Byers' vehicle and found a tactical vest, weapons, and several anti-abortion pamphlets.

The State charged Byers with one count of threatening to bomb or injure property under RCW 9.61.160(1).

B.  MOTION TO SUPPRESS

Prior to trial, Byers moved to suppress the evidence found in the search of his vehicle. Byers argued that there was no nexus between the October 22 text message and the December search and that the State was "throwing out extra things to make him look bad" so "[i]t really becomes 404(b), rather than something related to . . . the allegation before the Court and before the jury." 1 Verbatim Rep. of Proc. (VRP) (Jan. 29, 2024) at 52.

---

[1] We note that pages of Exhibit 1 are not numbered. However, for the purposes of this opinion, we number the pages 1 through 3 starting with the first page of the exhibit.

2

In response, the State clarified that it was not seeking to admit the evidence under ER 404(b). Instead, the State argued that the results of the search were probative on the issues of true threat and identity. The trial court denied Byers' motion to suppress because the search was part of an ongoing investigation related to the text message.

C.    TRIAL

1.    Evidence

The State presented the text message as an exhibit at trial. The State also presented testimony from Pastor Lloyd and several police officers who were involved in the investigation.

Pastor Lloyd testified that he reported the text message to the police. He stated that he believed the message was from Byers because Byers had texted him prior to October 22, because he discussed the text message with Byers, and because Byers had previously expressed "a very strong opinion about abortion . . . and needing to do more to stop it." 1 VRP (Jan. 29, 2024) at 194

Detective Steven Romero testified that the Vancouver Planned Parenthood was the only Planned Parenthood in Clark County and that it was located in a building.

Sergeant Joseph Graff testified that during the investigation, police obtained a search warrant for Byers' vehicle. Sergeant Graff identified several photographs of items that were found during the search, including a tactical vest, an assault rifle, several magazines and ammunition, a knife, another handgun, and additional rounds. In addition, police found anti-abortion pamphlets in the vehicle. The trial court admitted photographs of the weapons and anti-abortion pamphlets.

On several occasions, Byers cross-examined the State's witnesses about whether Byers sent the text message or whether the text message was spoofed (i.e., whether the text message only appeared to come from Byers).

2.      State's Closing Arguments

The State argued that the text message demonstrated a serious intent to do harm. The State contended that the text message directed the recipients to use their firearms to shut down the Planned Parenthood clinic.

While discussing the elements of the crime, the State argued that evidence may be direct or circumstantial. The State contended that there was "circumstantial evidence from his messages, . . . his attitude towards abortion," "[h]is information in his car about abortion," and "[h]ow strongly he feels about abortion" to infer that Byers threatened to injure a building. 1 VRP (Jan. 30, 2024) at 306. The State directed the jury's attention to the photograph of the Planned Parenthood clinic and argued that the jury could "reasonably infer that the defendant was talking about this Planned Parenthood in Vancouver. . . . The church is in our county, it's in our state. All the people that he's sending this message to are people involved in his church in Battleground. You can make that reasonable inference." 1 VRP (Jan. 30, 2024) at 307.

The State also argued that the text message was not a joke; the message began with a photograph of firearms and talked about violence. The State concluded its argument with:

> [Y]ou're either gonna [sic] threaten someone as a joke or not. Today's society, and you get to walk in, cause the Judge instructed you with your own common sense, your own life experiences, to find what the truth is. And that's what a verdict means, truth. . . . And when you analyze a threat in today's society, where mass shootings happen. Where threats to bomb, turn into real bombs. Where threats to shoot somebody actually turn[] [in]to actual deaths. This isn't 1970. This is where mass shootings occur on a regular basis. Where people, innocent people, children,

people going to clinics, people going to churches die. So, when you send out messages with assault rifles and talks of gas chambers and shutting down clinics, it's no joke in 2024, in 2022, in 2023.

1 VRP (Jan. 30, 2024) at 308-09.

The jury found Byers guilty of threatening to injure property.

Byers appeals.

## ANALYSIS

A. SUFFICIENCY OF THE EVIDENCE

Byers argues that there was insufficient evidence to show that he expressed a true threat to injure the Planned Parenthood building. We disagree.

### 1. Legal Principles

Generally, when determining whether evidence is sufficient to support a criminal conviction, the applicable inquiry is whether "'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Roberts*, 5 Wn.3d 222, 231, 572 P.3d 1191 (2025) (emphasis in original) (quoting *Jackson v. Virginia,* 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). "[J]udicial review includes '*all of the evidence*' considered in a light most favorable to the prosecution." *Id.* (emphasis in original) (quoting *Jackson,* 443 U.S. at 318-19.) "When a criminal defendant challenges sufficiency of the evidence, 'all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.'" *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019) (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)), *cert. denied*, 589 U.S. 1148 (2020). "'Circumstantial evidence and direct evidence are equally reliable in determining the sufficiency of the evidence.'"

*Id.* (internal quotation marks omitted) (quoting *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010)).

However, because this issue involves a First Amendment consideration—whether Byers' message constituted a "true threat" and therefore unprotected speech—"[i]t is not enough to engage in the usual process of assessing whether there is sufficient evidence in the record to support the trial court's findings." *State v. Kilburn*, 151 Wn.2d 36, 49, 84 P.3d 1215 (2004). We must independently review the crucial facts that bear on the constitutional question. *Id.* at 52. However, our review does not extend to determinations of witness credibility. *State v. Locke*, 175 Wn. App. 779, 791, 307 P.3d 771 (2013), *review denied*, 179 Wn.2d 1021 (2014).

2.      Evidence of True Threat

To convict Byers of threatening to bomb or injure property under RCW 9.61.160(1), the State had to prove that Byers threatened to bomb or otherwise injure any building. As our Supreme Court held in *State v. Johnston*, 156 Wn.2d 355, 363-64, 127 P.3d 707 (2006), the statute applies only to true threats—not threats made in jest or political statements.

"'True threats are serious expression[s] conveying that a speaker means to commit an act of unlawful violence.'" *State v. Calloway*, 31 Wn. App. 2d 405, 416, 550 P.3d 77 (alteration in original) (internal quotation marks omitted) (quoting *Counterman v. Colorado*, 600 U.S. 66, 75, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023)), *review granted*, 3 Wn.3d 1031 (2024).

In *Counterman*, the United States Supreme Court held that the First Amendment "demands 'a subjective mental-state requirement'" of at least recklessness. *Calloway*, 31 Wn. App. 2d at 416 (quoting *Counterman*, 600 U.S. at 75). Accordingly, in addition to the statutory elements, the State must prove "'that the defendant consciously disregarded a substantial risk that [the]

6

communications would be viewed as threatening violence.'" *Id.* (alteration in original) (quoting *Counterman*, 600 U.S. at 69). The defendant must be "at least 'aware that others could regard [the] statements as threatening violence and deliver[ed] them anyway.'" *Id.* at 420 (alterations in original) (internal quotation marks omitted) (quoting *Counterman*, 600 U.S. at 79).

"[A] person knowingly threatens when they know 'to a practical certainty that others will take [their] words as threats.'" *Id.* at 416-17 (second alteration in original) (quoting *Counterman*, 600 U.S. at 79). In contrast, reckless conduct is less morally culpable than knowing conduct. *Id.* at 416. But reckless conduct is more morally culpable than negligent conduct. *Id.* at 417.

Because courts rarely have direct evidence of a defendant's intent, it "is typically proved through circumstantial evidence." *State v. Vasquez*, 178 Wn.2d 1, 8, 309 P.3d 318 (2013). "'[I]ntent to commit a crime may be inferred if the defendant's conduct and surrounding facts and circumstances plainly indicate such an intent as a matter of logical probability.'" *Id.* (quoting *State v. Woods*, 63 Wn. App. 588, 591, 821 P.2d 1235 (1991)).

Byers argues that the text message was political speech rather than a true threat. Byers relies on *Locke* and *City of Seattle v. Buford-Johnson*, 20 Wn. App. 2d 616, 501 P.3d 594 (2021).

In *Locke*, the court considered whether there was sufficient evidence of a "true threat." 175 Wn. App. at 788. Locke sent two e-mails to Governor Gregoire. *Id.* at 785. In the first e-mail, Locke identified his city as "'Gregoiremustdie'" and wrote that he hoped Governor Gregoire would witness "'one of [her] family members raped and murdered by a sexual predator. Thank you for putting this state in the toilet.'" *Id.* (quoting record). In his second e-mail, Locke again listed his city as "'Gregoiremustdie'" and wrote that Governor Gregoire "'should be burned at the stake like any heretic.'" *Id.* (quoting record). Two minutes later, Locke sent an event request to

Governor Gregoire that identified his organization as "'Gregoire Must DIe [sic],'" requested that the event be held at the Governor's mansion, and listed the subject as "'Gregoire's public execution.'" *Id.* at 786 (alteration in original) (quoting record).

The court determined that the first e-mail, while "crude and upsetting" was "more in the nature of hyperbolic political speech, predicting threatening personal consequences from the State's policies." *Id.* at 791. However, the second e-mail and the event request were not political speech because they "conveyed no view or position on public issues or policies." *Id.* at 795. The court further clarified that referencing burning at the stake did not transform the message into legitimate political speech despite its political roots. *Id.* at 792.

In *Buford-Johnson*, the court also considered whether there was sufficient evidence of a true threat. 20 Wn. App. 2d at 622. In that case, Johnson yelled "'f[***] the police'" at a police officer and gestured at the officer as if Johnson had a firearm. *Id.* at 619 (internal quotation marks omitted) (quoting record). Johnson did not stop or approach the officer; rather, he drove away. *Id.* at 626. On appeal, the court determined that Johnson's speech and conduct did not constitute a true threat; rather, it was "a generalized and political statement of animosity." *Id.* at 625. Further, the court noted that political speech is that which is "'relat[ed] to government, a government, or the conduct of government affairs' and expressed a pointed opinion to that effect." *Id.* at 625 n.4 (alteration in original) (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1755 (2002) (definition of "political")). Noting that Johnson did not stop or approach the officer, the court determined that the facts were "suggestive of a casual encounter or idle talk than a serious threat." *Id.* at 626.

Here, Byers' text message was not merely hyperbolic political speech as in *Locke* nor was it a generalized political statement as in *Buford-Johnson*. *Locke*, 175 Wn. App. at 795; *Buford-Johnson*, 20 Wn. App. at 625. Even if Byers' statements in his text message are interpreted as hyperbolic or political in nature based on its target, Planned Parenthood, Byers did not just make a general political statement. Instead, Byers directly called for violence against Planned Parenthood. Byers' text message attached a photograph of an assault rifle, magazines, and other weapons, along with a statement that "Planned [P]arenthood doesn't stand a chance," that he knows the message recipients "have plenty of weapons," and that the recipients "interested in shutting down the clinic" should let him know. Ex. 1, at 1, 3. Byers' text message also made a call for violence by saying that "[i]n the same way that you wouldn't preach the gospel to Hitler's gas chamber team, or the nazi cops, you don't preach the gospel to people actively killing other people. You stop them from killing other people." Ex. 1, at 2. "Otherwise, what is the purpose of having weapons . . . . [T]hese poor children are being slaughtered daily." Ex. 1, at 3. These statements were not merely generalized political statements of animosity like the conduct in *Buford-Johnson*—Byers' statements were a specific call to a particular audience to stop Planned Parenthood through violence. 20 Wn. App. at 625-26. In addition, Byers had previously expressed his strong feelings against abortion and "needing to do more to stop it" to Pastor Lloyd, who was a recipient of the text message. 1 VRP (Jan. 29, 2024) at 194.

The evidence supports the logical probability that Byers consciously disregarded a substantial risk that the message would be viewed as threatening violence. Therefore, sufficient evidence supports the finding of a true threat.

B.    ADMISSION OF PHOTOS INTO EVIDENCE

Next, Byers argues that the trial court abused its discretion by "admitting irrelevant photos" from the search of his vehicle. Br. of Appellant at 39. Specifically, Byers contends that there was "no nexus between the evidence seized and [the] text message." Br. of Appellant at 39. We disagree.

1.    Legal Principles

We review a trial court's evidentiary rulings for abuse of discretion. *State v. Restvedt*, 26 Wn. App. 2d 102, 122, 527 P.3d 171 (2023). "'A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons.'" *Id.* at 122-23 (internal quotation marks omitted) (quoting *State v. Arndt*, 194 Wn.2d 784, 799, 453 P.3d 696 (2019), *cert. denied*, 142 S. Ct. 726 (2021)).

Relevant evidence is generally admissible. ER 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. "'[T]he threshold to admit relevant evidence is very low . . . [e]ven minimally relevant evidence is admissible.'" *State v. Bellerouche*, 33 Wn. App. 2d 877, 888, 565 P.3d 604 (2025) (third alteration in original) (quoting *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002)).

2.    Relevance

Byers argues that the photographs from the search of his vehicle were not relevant to the issue of whether the text message was a true threat. Specifically, Byers asserts that the evidence from the search was irrelevant because the items were discovered more than a month after the text message was sent and because there was no indication that the recipients of the text message knew

about the items in his car. Also, Byers argues that the photographs were not needed to prove identity.[2] Although the items resulting from the search were discovered more than a month after the text message was sent and the record does not indicate that the text message recipients knew about these items, the trial court did not abuse its discretion in finding the photographs were relevant.

The evidence was relevant to the issue of a true threat because photographs of Byers' guns and anti-abortion pamphlets make it more probable that Byers consciously disregarded the risk that the text message could be interpreted as threatening violence. The photographs of guns and ammunition made it more probable that Byers had the means to carry out the threat with the weapons in the vehicle. And the photographs of the anti-abortion pamphlets in the vehicle reflect his strong opinions about abortion, like those expressed in the messages, such that the photographs make it more probable that his text message was a threat against Planned Parenthood. Accordingly, the photographs were relevant to the issue of a true threat.

Additionally, although Byers argues that the photographs were not necessary to prove identity, Byers clearly disputed identity by cross-examining the State's witnesses about whether they could confirm Byers actually sent the message. Thus, the photographs made it more probable that Byers actually sent the message because his vehicle contained similar weapons to those attached to the message. And the photographs of the anti-abortion pamphlets make it more probable that Byers sent the text message based on the similar anti-abortion sentiments contained

---

[2] Byers makes only passing references in his brief to the number of photographs admitted. Without argument, we do not consider this issue. *See* RAP 10.3(a)(6); *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 ("Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."), *review denied*, 136 Wn.2d 1015 (1998).

in the text message. Therefore, the trial court did not abuse its discretion by determining that the photographs were relevant.[3]

C.     PROSECUTORIAL MISCONDUCT

Byers contends that his conviction should be reversed because the State committed prosecutorial misconduct. Byers identifies several instances of alleged misconduct. We disagree.

1.     Legal Principles

To prevail on a claim of prosecutorial misconduct, the defendant must show the prosecutor's conduct was improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). We apply a two-pronged analysis: First, we consider "whether the prosecutor's conduct was improper." *State v. Teas*, 10 Wn. App. 2d 111, 120, 447 P.3d 606 (2019), *review denied*, 195 Wn.2d 1008 (2020). If the conduct was improper, "then the question turns to whether the prosecutor's improper conduct resulted in prejudice." *Id.* "Prejudice is established by showing a substantial likelihood that the prosecutor's misconduct affected the verdict." *Id.*

If the defendant fails to object to the prosecutor's conduct at trial, they waive "'any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice.'" *Id.* at 121 (quoting *Emery*, 174 Wn.2d at 760-61). Under this standard, the defendant must show "'(1) no curative instruction would have obviated any prejudicial effect on the jury and (2) the misconduct resulted in prejudice that had a substantial likelihood of affecting the jury verdict.'" *Id.* (internal quotation marks omitted) (quoting *Emery*,

---

[3]  To the extent Byers argues that the evidence should have been excluded under ER 403, Byers did not preserve this issue. We need not review any claim of error which was not raised in the trial court under RAP 2.5.

174 Wn.2d at 761). The analysis focuses on "whether the resulting prejudice could have been cured." *Id.*; *see also State v. Crossguns*, 199 Wn.2d 282, 299, 505 P.3d 529 (2022) ("'Reviewing courts should focus less on whether the prosecutor's misconduct was flagrant or ill intentioned and more on whether the resulting prejudice could have been cured.'" (quoting *Emery*, 174 Wn.2d at 762)).

Because Byers did not object to the prosecutor's statements at trial, he must show that the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice.

2.      "Truth"

Byers argues the prosecutor committed misconduct during closing arguments by asking the jury "'to find what the truth is'" and arguing that "'a verdict means[] truth.'" Br. of Appellant at 51-52 (quoting 1 VRP (Jan. 30, 2024) at 309). The State concedes that the prosecutor's argument was improper but contends that "it was a single statement surrounded by otherwise proper arguments regarding whether Byers had made a true threat." Br. of Resp't at 31.

We accept the State's concession that the prosecutor's argument was improper. *Crossguns*, 199 Wn.2d at 297 ("It is improper for a prosecutor to ask the jury to decide who was telling the truth. We have also held that it is misconduct for a prosecutor to plead for the jury to 'speak the truth' reaching its verdict." (citations omitted) (internal quotation marks omitted) (quoting *State v. Lindsay*, 180 Wn.2d 423, 436, 326 P.3d 125 (2014))). But because Byers did not object at trial, he must show that no curative instruction would have prevented any prejudicial effect and that the prejudice had a substantial likelihood of affecting the jury verdict.

The State argues that an objection could have cured any prejudice because the trial court could have clarified the role of the jury and the burden of proof. We agree.

A curative instruction for the jury to disregard the prosecutor's argument and clarifying the role of the jury would have eliminated any resulting prejudice. Therefore, Byers fails to show that the State's conduct was so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice. Accordingly, Byers' prosecutorial misconduct claim fails.

3.      Asking the Jury to Infer

Byers also argues that the State committed misconduct when it asked the jury to reasonably infer that Byers was talking about a Planned Parenthood building because "there was no evidence presented" to support this inference. Br. of Appellant at 52.

Prosecutors "have 'wide latitude to argue reasonable inferences from the evidence.'" *In re Pers. Restraint of Phelps*, 190 Wn.2d 155, 166, 410 P.3d 1142 (2018) (quoting *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011)). However, a prosecutor's argument "must be based on the evidence." *Crossguns*, 199 Wn.2d at 296-97.

Here, after discussing the text message Byers sent, the prosecutor discussed the evidence relating to Byers' attitude towards abortion and the definition of "building" and argued that the jury could "reasonably infer that the defendant was talking about this Planned Parenthood in Vancouver." 1 VRP (Jan. 30, 2024) at 307. A prosecutor has wide latitude to argue reasonable inferences from the evidence. And the State's evidence included the text message which stated, "Planned [P]arenthood doesn't stand a chance," and "[i]f you're interested in shutting down the clinic, please let me know." Ex. 1, at 1, 3. There also was evidence that there is a Planned Parenthood in Vancouver and that Planned Parenthood is in a building. Thus, the prosecutor's

arguments were supported by the evidence or were based on reasonable inferences from the evidence and not improper.

4.      Discussing Mass Shootings and Abortion

Although a prosecutor may argue reasonable inferences from the evidence, a prosecutor "'should not use arguments calculated to inflame the passions or prejudices of the jury.'" *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012) (quoting AM BAR ASS'N, STANDARDS FOR CRIMINAL JUSTICE std. 3-5.8(c) (2d ed. 1980)).  A prosecutor's statements during closing argument are viewed in "context of the total argument, the issues in the case, the evidence addressed in the argument, and the instructions given to the jury." *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998).

Here, Byers argues the prosecutor committed misconduct when he discussed mass shootings because there was no evidence of mass shootings at trial and because Byers was charged with threatening to injure a building, not murder or assault.  Byers also argues that the State presented no evidence about the 1970s at trial.

Considering the prosecutor's statements in the context of the total argument and the issues in the case, the prosecutor's reference to mass shootings falls within a prosecutor's wide latitude to argue reasonable inferences from the evidence.  After discussing how Byers' text message was a true threat, the prosecutor contended, "And when you analyze a threat in today's society, where mass shootings happen. . . . This isn't 1970.  This is where mass shootings occur on a regular basis."  1 VRP (Jan. 30, 2025) at 308-09.  While a reference to the 1970s was unrelated to the evidence at trial, the State's argument merely compared today's environment to the 1970s,

assuming that in today's society, everyone is aware of the prevalence of mass shootings. Accordingly, this argument was not improper.

But even if the prosecutor's commentary on mass shootings was improper, Byers fails to show that the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured any resulting prejudice. Had Byers objected, the trial court could have instructed the jury to disregard the prosecutor's arguments. Such an instruction would have cured any resulting prejudice.

Finally, Byers argues that the State's comments on his beliefs about abortion were not based on evidence. The prosecutor argued that the jury could "use circumstantial evidence from his messages . . . to infer that what his threat is, is to injure a building. And the circumstantial evidence of that[] is his attitude towards abortion. His information in his car about abortion. How strongly he feels against abortion." 1 VRP (Jan. 30, 2024) at 306. This argument was based on evidence presented at trial. The text message reflected Byers' views on abortion, and Pastor Lloyd testified about Byers' views on abortion. Accordingly, the State properly based this argument on evidence and the reasonable inferences from the evidence presented at trial.

Byers fails to show improper conduct or prejudice. Therefore, his prosecutorial misconduct claims fail.

CONCLUSION

Because there was sufficient evidence of a true threat, the trial court did not abuse its discretion by admitting photographs of weapons and anti-abortion pamphlets into evidence, and Byers' conviction should not be reversed due to prosecutorial misconduct, we affirm Byers' conviction.

16

No. 60168-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Glasgow, J.

Cruser, C.J.